ÆTNA LIFE INS. CO. v. FARRELL et al.

(Court of Civil Appeals of Texas. Dallas. March 8, 1913.)

INSURANCE (§ 84*)—AGENTS—COMMISSION.

In an action by a life insurance broker for commissions for securing liability business for defendant, evidence *held* insufficient to establish any agreement for the payment of commissions.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 111–114; Dec. Dig. § 84.*]

Appeal from Dallas County Court, at Law; W. F. Whitehurst, Judge.

Action by Porter Farrell against the Ætna Life Insurance Company and others. From a judgment against the named defendant, it appeals. Reversed and rendered.

Harry P. Lawther, of Dallas, for appellant. Allen & Flanary and Flippin, Gresham & Freeman, all of Dallas, for appellee.

TALBOT, J. The appellee, Porter Farrell, brought this suit against the appellant, Ætna Life Insurance Company, and E. Dick Slaughter and C. H. Verschoyle, alleging that in the year 1906 he made an agreement and contract with the appellant, through its agent, Louis M. Hastings, whereby appellant agreed to pay plaintiff 15 per cent. of the gross premiums derived from certain liability insurance, which the plaintiff at that time secured from Austin Bros., a firm engaged in bridge building; that, upon an application of the said Austin Bros., secured by plaintiff, the appellant issued a policy insuring said Austin Bros. against loss by reason of any accident to their employés; and that said insurance has been continuously in force, under subsequent policies, since the time plain-

tiff .secured the business. Plaintiff further alleged that the insurance company claimed that, if there was any liability, it was upon the part of its general agents, and not upon its part, and on which account plaintiff made appellants Verschoyle and Slaughter parties defendant to the suit. Plaintiff alleged, in substance, that his commissions were paid until about July, 1908, at which time the insurance company's general agent, Slaughter, claimed to have rebated the premiums to the said Austin Bros., with the consent of appellant, and thereafter declined to pay plaintiff his premiums; that, since the last payment of premiums made to him, the sum of $2,-328.27 was paid in premiums by the insured, and that he (plaintiff) was entitled to receive 15 per cent. thereof, or the sum of $358.23, as commissions, for which he prayed judgment. The defendant Ætna Life Insurance Company answered by general and special demurrers; general denial; plea of statute of limitation of two years; special plea that the policy, of which appellee was claiming part of the premiums as commissions, was not the policy which had been procured by appellee, but was a different policy, written upon a different classification and at a different rate, and procured by a different agent, to wit, E. Dick Slaughter; special plea that appellee was simply a broker and was not the agent of appellant, and that, if he were due any commission for procuring the insurance described in his petition, same was due by the general agent of appellant at Dallas, and not by appellant; special plea setting up that in fact, at the time appellee claimed to have procured this policy of insurance, he was not licensed to do that character of insurance business by the insurance commissioner of the state of Texas, by reason of which any such contract, as described in his petition, was, under the statute, void. The answer of the other defendants, E. Dick Slaughter and C. H. Verschoyle, becomes unimportant and need not be stated. The case was tried before the court and a jury and the trial resulted in. a verdict and judgment in favor of the plaintiff against the insurance company for the sum of $358.24, and in a verdict in favor of the defendants E. Dick Slaughter and C. H. Verschoyle by peremptory instructions from the court. Appellant's motion for a new trial being overruled, it appealed.

Appellant presents a number of assignments of error; but, in the view we take of the case, it is unnecessary to state and discuss them in detail. It is contended that the court erred in refusing, upon the conclusion of the evidence, to instruct the jury, as requested by appellant, to return a verdict in its favor. This contention, we think, should be sustained. Plaintiff's right of recovery is based upon allegations charging that he made an agreement and contract with the appellant in the year 1906, through its agent, Louis M. Hastings, whereby ap-

pellant agreed to pay plaintiff 15 per cent. of the gross premiums derived from certain "liability insurance" which the plaintiff at that time secured from Austin Bros., a firm engaged in bridge building; and we are of opinion the evidence was insufficient to sustain these allegations, and warrant the verdict and judgment rendered.

The plaintiff testified: "In 1906 I had some business with Austin Bros. by which I obtained from them an application for a policy," and "I had some business with Mr. Louis M. Hastings, pertaining to the Austin Bros.' policy. I had an agreement with the Ætna Life Insurance Company with reference to placing the policy. I had a conversation with Mr. Hastings about it, but I had an understanding in this regard with the company prior to that; that is, my contract with the Ætna Life Insurance Company required that I place any business with it that I could get. I have a contract here with said company. This contract bears my signature, and was signed in Dallas, December 14, 1901. I saw Mr. Bushnell sign it also." Here plaintiff introduced the following paragraph of the contract referred to in his testimony, namely: "It is agreed by the party of the second part that any accident insurance written by them will be placed in Ætna Life Insurance Company through the regular authorized general agents of the accident department in Dallas." Continuing with his testimony, the plaintiff said: "At the time I had the conversation with Mr. Hastings in 1906, concerning the Austin Bros.' business, I was a member of the firm of Farrell & Harris, agents of the life department, and at that time the company had an accident department of which J. B. Nabors was the agent in 1906 for North Texas. * * * When I procured this business from Austin Bros. for the Ætna, I was at their office to solicit insurance, and Mr. Austin said he didn't want any more life insurance, but he wanted some liability insurance. * * * I got an application blank and got it filled out by Mr. Austin. I did not know where Mr. Hastings was then, but I saw him in a few days. I then corresponded with the home office by letter and telegram in order to secure the rate on the Austin business. * * * However, I did not get the matter consummated by my correspondence, and got no satisfaction at all. But in a few days, * * * after I first took the matter up with Mr. Johnson, Mr. Hastings came to Dallas, and in the meantime the matter had been hanging fire. When Mr. Hastings came to Dallas, I told him it was a nice piece of business, and a good commission, and I wanted him to see what he could do about it. * * * The Austin Bros.' application was submitted to the company, through me, to the downstairs office; that is, by me, through my office to the accident department downstairs; that is, the application was delivered to Mr. Nabors' office, and it has never been in my pos-

session since that time, I don't think. When I say Nabors' office, I mean the general agency of the company. * * * This application is dated May 26, 1906, and at that time Mr. Hastings was not in Dallas. The company agreed to pay me 15 per cent. commission on the premiums of the policy in case it took the policy as per the application itself."

On cross-examination, and in response to a question calling for the name of the person who, on behalf of the company, made this agreement with him, the plaintiff testified: "I suppose it was Mr. Johnson who told me for the company that they would pay my commission. He was clerking in the office of J. B. Nabors; but I do not know who paid him his salary. Well, I do not know that Mr. Johnson told me that the company would pay me my commission either, as I did not make any agreement with him. I filled in the 15 per cent. commission in the application myself, as that was the usual commission paid to those from whom the business came, and it was ratified, and they had even paid as much as 20 per cent. brokerage. Nobody specially told me that they would pay me 15 per cent. commission; that that was the general fee. Nobody told me that in advance. This application is dated May 26, 1906, and at that time Mr. Hastings was not in Dallas. I talked with Mr. Hastings as soon as I could see him, and that was after I delivered this application to Mr. Johnson. We got in a wrangle and could not get satisfactory rates, and then I had to take the matter up with Mr. Hastings, and I told him I could not place the business unless I could get a satisfactory rate, and he got it for me. We agreed on the deal together. However, I do not remember specially whether Mr. Hastings told me the Ætna Insurance Company would pay me 15 per cent. commission or not. I don't know whether the question of commission was ever discussed between us; but I do know that the contract was discussed in many ways, and we went over it often. At that time I was local agent for the life department. I was general agent of the life department of the Ætna Insurance Company here; and J. B. Nabors was general agent for the liability and accident department of the same company here. I got my commission from the general agent of the accident department. * * * I closed the deal with Hastings, passed it up to him, and he ratified it. As to whether Mr. Hastings ever personally told me that the Ætna Insurance Company would pay me this 15 per cent. commission, I will say that I had so many conversations with him that I cannot remember any specific conversation at any particular time. * * * Mr. Hastings' business in the matter was practically to get the company to give a rate that Austin Bros. would accept, and the premiums that the company would receive; and it was that that Mr. Hastings was communicating with the home office about. The application for the first Austin policy is dated May 26, 1906, and that policy expired in May, 1907. I don't suppose there was any other application taken; and I sue for 15 per cent. commission on all the premiums paid. I got my commissions up to some time in 1908; but now I am suing for my commissions on the premiums paid by Austin Bros. on policies issued in 1908, 1909, and 1910, because I originated the business for the company."

Louis M. Hastings, for the insurance company, testified: "I never did at any time make any kind of an agreement, verbal or in writing, with Porter Farrell (plaintiff) on behalf of the Ætna Life Insurance Company, whereby said company became bound to pay him 15 per cent. of the gross premiums on all accident business that he might bring to said company through its local agent at Dallas. *. * * The business of the Ætna Life Insurance Company is, as a matter of convenience, conducted in departments; the division being the life department, which writes life and endowment insurance, the accident and liability department, which writes accident, health, and liability insurance. * * * I had no authority to make any agency agreement on behalf of the local agency in Dallas. J. B. Nabors was the general agent of the accident and liability department of the Ætna Life Insurance Company for the northern part of Texas, having his head office in Dallas, Tex., on May 26, 1906, at the time when an application for a liability policy covering Austin Bros. was secured. I did not reach Dallas until after the arrangements for securing Austin Bros.' risks had been consummated. I had no such authority, and did not, in the year 1906, prior to May 26th, make any contract to pay Porter Farrell (plaintiff) 15 per cent. commission on liability insurance on business brought by him to the company, nor did I make a contract to pay him a certain rate of commission on any policy issued to Austin Bros.; I not being in Dallas at the time. My duties did not contemplate making contracts with brokers for any specified class of insurance written by the company, as all contracts are made with general or district agents, who are supposed to secure business from subagents, brokers, and solicitors upon such terms as they may make; the company only being responsible to the general agent for specified commissions upon gross premiums reported to it according to the written contract in force at the time."

Walter C. Faxon, vice president of the insurance company, testified: "In 1906 our business was conducted almost wholly, if not entirely, through a general agency organization; and it was not the duty of the superintendent of agencies to make contracts with brokers for the procurement of liability insurance, as such contracts were made by the general agents who would be responsible

to the company for business secured through brokers with whom they might do business. The company assumed no obligations for the payment of commissions to brokers upon business they might bring to the general agents; and Mr. Hastings had no authority to contract with Porter Farrell, or anybody else securing liability insurance, to pay him commissions upon same. The brokers must look to the general agents for the payment of commissions to which they may be entitled by reason of their agreements with such general agents. * * * In 1906, and prior to the 25th of May of that year, J. B. Nabors was the general agent of the Ætna Life Insurance Company in Dallas, and he had authority to make a brokerage contract with Porter Farrell, but he had no authority to embody in such contract that the Ætna Life Insurance Company would be obligated to pay him commissions upon such liability business as he might secure, including the policy issued to Austin Bros.; the obligation to pay such commissions rested upon the general agent himself, and not upon the company."

E. Dick Slaughter testified: "I paid Farrell commissions in 1906 and 1907 because I considered that he controlled that business; but in 1908 I found out that he didn't control it, and I also found out that I would lose the whole business if I continued to pay him a commission. * * * The rate was not the same after 1907, but was considerably reduced after then. I got authority from the company to reduce the rates. * * * Mr. Austin told me that, if I did not meet the competitive rates of the Maryland Casualty Company and others, he was going to take the business away from us. * * *" He further testified that the insurance company had nothing to do with Mr. Farrell's commissions.

We have not, of course, undertaken to quote all the testimony, but only that portion of it which we regard as the most important in determining whether or not liability has been shown on the part of appellant for the commissions sued for by appellee. Our conclusion, as heretofore indicated, is that such liability has not been shown. While appellee, on direct examination, made the general statement that the appellant agreed to pay him the commissions claimed, yet, when questioned on cross-examination as to what person on behalf of the company made such agreement with him, he failed to disclose or give the name of the person. The allegation is that the agreement was made with Louis M. Hastings; but appellee's testimony is too uncertain, indefinite, and unsatisfactory to sustain the allegation. While expressions are found in his testimony to the effect that, "We [Hastings and himself] agreed on the deal together," and "I closed the deal with Mr. Hastings, passed it up to him," etc., still he says, "Nobody specially told me that they would pay me 15 per cent. commissions, but that was the general fee. * * * I talked with Mr. Hastings as soon as I could see him, and that was after I delivered this application to Mr. Johnson. * * * However, I do not remember specially whether Mr. Hastings told me the Ætna Insurance Company would pay me 15 per cent. commission or not. I don't know whether the question of commission was ever discussed between us; but I do know that the contract was discussed in many ways, and we went over it often. * * * I got my commission from the general agent of the accident department."

It does not appear by the testimony of any witness that Louis M. Hastings had authority to make the alleged contract; nor are the facts and circumstances in evidence sufficient to show authority or that the making of such a contract was within the scope of his agency for appellant. He positively and unequivocally denies making any contract or agreement with appellee to pay him the commissions sought to be recovered; and without contradiction, as we understand and construe the evidence, he emphatically declares that he had no authority to make such contract for or on behalf of the insurance company. The indorsements on the application made by Austin Bros., "Broker or subagent, Porter Farrell," "No other interested," "Brokerage 15 per cent.," are of little or no probative force in determining the liability of the appellant. This application contains no promise or obligation whatever, on the part of the appellant or any one else, to pay appellee the commissions he seeks to recover. The fact that appellee was paid 15 per cent. commission on the premiums paid by Austin Bros., for the years 1906-'07, 1907-'08, avails practically nothing. The undisputed evidence shows that these commissions were collected from the general agents of appellant; and it does not appear that the insurance company's money was used in paying them. On the contrary, we think the evidence very conclusively shows that, for any services appellee may have rendered in securing the application of Austin Bros., he was to be paid by the general agents of the insurance company on their own account, and not by the company. Faxon, vice president of the insurance company, testified, without contradiction, that Hastings had no authority to contract with appellee, or anybody else securing liability insurance, to pay him commissions upon the same, and that brokers must look to the general agents for the payment of commissions to which they may be entitled by reason of their agreements with such general agents. The contract made with the firm of Farrell & Harris cannot be relied on to establish an obligation on the part of the company to pay the commission of 15 per cent. claimed in this suit. Certainly the appellee was not the general agent of appellant, operating un-

der said contracts, in securing the application of Austin Bros. The application for a policy in behalf of Austin Bros. was for "liability insurance," and was forwarded to appellant by J. B. Nabors, its general agent at Dallas. Appellee's alleged cause of action is not based on said contracts; and besides, as we understand these contracts, they have reference only to the securing of life or accident insurance on the part of the agents, and not to "liability insurance," which it seems, under the law and by the undisputed proof, is a separate and distinct character of business. The appellant conducted its business in different departments, such as life, accident, and liability departments, and "a license to conduct business in one department does not authorize an agent to write business for another department." We fail to see the relevancy of the contracts above referred to, and are of opinion they should have been excluded upon the objection of appellant.

We have carefully examined the evidence as it appears in the record, and our conclusion is that appellee failed to make out the case pleaded by him against appellant, and was not entitled to recover as to it. The correctness of the judgment in favor of Slaughter and Verschoyle is not questioned in this court, and cannot be disturbed. The case as to appellant seems to have been fully developed, and, in accordance with the statute, we will render in this court such judgment as to it as in our opinion should have been rendered in the court below.

It is therefore ordered that the judgment of the county court, at law, as to appellant be reversed, and that judgment be here rendered in its favor. The judgment as to Slaughter and Verschoyle will not be disturbed.

Reversed and rendered in favor of appellant.